Barbara A. Rohr, SBN 273353
Benjamin Heikali, SBN 307466
**FARUQI & FARUQI LLP**
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: (424) 256-2884
Facsimile: (424) 256-2885
Email: brohr@faruqilaw.com
      bheikali@faruqilaw.com

**[Additional counsel on signature page]**

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSH KRIEGER, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> VCA, INC., ROBERT L. ANTIN, JOHN M. BAUMER, JOHN B. CHICKERING JR., JOHN HEIL,  and FRANK REDDICK, <br><br> Defendants. | **CLASS ACTION** <br><br> Civil Action No. : 2:17-cv-01790 <br><br> **CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934, AND RULE 14A-9** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Josh Krieger ("Plaintiff"), by and through his undersigned counsel, brings this stockholder class action on behalf of himself and all other similarly situated public stockholders of VCA, Inc. ("VCA" or the "Company") against VCA, Robert L. Antin, Joh M. Baumer, John B. Chickering Jr., John Heil, and Frank Reddick, the members of VCA's board of directors (collectively referred to

as the "Board" or the "Individual Defendants"), for violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S,C. §§78n(a) and 78t(a) respectively, and United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, in connection with acquisition of VCA by Mars, Inc. ("Mars") through a merger transaction as alleged in detail herein ("Proposed Transaction"). Plaintiff alleges the following based upon personal knowledge as to himself, and upon information and belief, including the investigation of Counsel, as to all other matters.

## NATURE OF THE ACTION

1. On January 9, 2017, VCA and Mars jointly announced that they had reached a definitive Agreement and Plan of Merger ("Merger Agreement") under which Mars, through its wholly-owned subsidiary, MMI Holdings, Inc., will acquire VCA in an all cash transaction valued at approximately $9.1 billion.[1] Under the terms of the Merger Agreement, VCA's public stockholders will receive $93.00 per share in cash for each of their VCA share ("Merger Consideration").

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") to be filed with the SEC on February 15, 2017. The VCA Board recommends in the Proxy Statement that VCA stockholders vote in favor of approving Proposed Transaction at the stockholder special meeting scheduled for March 28, 2017 and agree to exchange their shares pursuant to the terms of the Merger Agreement based among other things on internal and external factors examined by the Board to make its recommendation

---

[1]    The Proposed Transaction will be affected through Mars' wholly-owned Delaware Corporation Venice Merger Sub Inc ("Venice Merger Sub").  VCA will merge with and into Venice Merger Sub, with VCA surviving as a wholly-owned subsidiary of MMI Holdings, Inc.

CLASS ACTION COMPLAINT

and an opinion rendered by the Company's financial advisor, Barclays Capital, Inc.. ("Barclays").

3.     The Merger Consideration and the process by which Defendants agreed to consummate the Proposed Transaction are fundamentally unfair to VCA's public stockholders. The Company has reported increasing financial measure for 2016 and as a result, VCA's stock price had increased over $10.00 in the year prior to the announcement of the Proposed Transaction.

4.     As discussed further below, little real effort was made to engage in a true market check to find other parties interested in a strategic transaction with the Company to maximize value for VCA stockholders. The inadequate Merger Consideration reflects the lack of effort as it does not reflect the value of the Company or the fair value of VCA stock.

5.     To ensure the success of the Proposed Transaction, the VCA Board issued the Proxy Statement that fails to provide all material information.  In particular, the Proxy Statement does not include a fair summary of the financial analyses performed by Barclays and fails to disclose the projections for VCA (including a GAAP to Non-GAAP reconciliation mandated by the SEC).

6.     For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from consummating the Proposed Transaction or in the event the Proposed Transaction is consummated, recover damages resulting from the Individual Defendants' violations Sections 14(a) and 20(a) of the Exchange Act.

## PARTIES

7.     Plaintiff is and has been at all relevant times, a stockholder of VCA common stock.

8.     Defendant VCA is a pet health care company with its principal office at 12401 West Olympic Boulevard, Los Angeles, California. It is organized under

CLASS ACTION COMPLAINT

Delaware state law. VCA common stock trades on the NASDAQ exchange under the symbol "WOOF".

9.     Defendant Robert L. Antin is the founder of the Company and serves as President, Chief Executive Officer of VCA and has served the Chairman of the Board since 1986.

10.     Defendant John M. Baumer has served on the Board since 2005.

11.     Defendant John B. Chickering, Jr. has served on the Board since April 2004.

12.     Defendant John Heil has served on the Board since February 2002.

13.     Defendant Frank Reddick has been a member of the Board since 2002.

14.     The above members of the VCA Board are referred to herein as the "Individual Defendants" and/or the "Board."

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

16.     Personal jurisdiction exists over each Defendant either because the Defendant is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

17.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at

CLASS ACTION COMPLAINT

issue had an effect in this District; and (ii) VCA has its principal place of business in Los Angeles, California, within this District.

## SUBSTANTIVE ALLEGATIONS

### Company Background and Proposed Transaction

18.　VCA describes itself as a leading North American animal healthcare company. We provide veterinary services and diagnostic testing services to support veterinary care and we sell diagnostic imaging equipment and other medical technology products and related services to veterinarians. We also franchise a premier provider of pet services including dog day care, overnight boarding, grooming and other ancillary services at specially designed pet care facilities.

19.　The Company's reportable segments are as follows: (i) the Animal Hospital segment operates the largest network of freestanding, full-service animal hospitals in the nation. The animal hospitals offer a full range of general medical and surgical services for companion animals. We treat diseases and injuries, offer pharmaceutical and retail products and perform a variety of pet wellness programs, including health examinations, diagnostic testing, routine vaccinations, spaying, neutering and dental care. At September 30, 2016 , our animal hospital network consisted of 776 animal hospitals in 43 states and in five Canadian provinces, and (ii) the Laboratory segment operates the largest network of veterinary diagnostic laboratories in the nation. Our laboratories provide sophisticated testing and consulting services used by veterinarians in the detection, diagnosis, evaluation, monitoring, treatment and prevention of diseases and other conditions affecting animals.　At September 30, 2016 , VCA's　laboratory network consisted of 60 laboratories serving all 50 states and certain areas in Canada.

20.　For the three and nine months ended September 30, 2016 , VCA's "All Other" category included the results of our Medical Technology and Camp Bow Wow operating segments. For the comparable prior periods in 2015, the

5

Company's "All Other" category included the results of operations of our Vetstreet operating segment, which we sold in December 2015. Each of these segments did not meet the materiality thresholds to be considered reportable segments.[2]

21.    The Proposed Transaction was announced on January 9 2017:

**Mars, Incorporated to Acquire VCA Inc.**
All-cash transaction valued at approximately $9.1 billion
VCA shareholders to receive $93 per share of VCA common stock
VCA to be a separate business unit within Mars Petcare

MCLEAN, VA. and LOS ANGELES, CA., Jan. 9, 2017 – Mars, Incorporated and VCA Inc. (NASDAQ:WOOF) today announced that they have entered an agreement under which Mars will acquire all of the outstanding shares of VCA for $93 per share, or a total value of approximately $9.1 billion including $1.4 billion in outstanding debt. The transaction price represents a premium of approximately 41 percent over VCA's 30-day volume weighted average price on January 6, 2017, and a premium of approximately 31 percent over VCA's closing price on January 6, 2017. The agreement has been unanimously approved by the boards of directors of both companies.

VCA joins Mars Petcare, one of the world's leading pet care providers. Pet care has been an important part of Mars for over 80 years. The transaction reaffirms Mars' commitment to the pet care industry and the veterinary profession, and once completed will help drive Mars Petcare's purpose to create A Better World for Pets. Mars Petcare's portfolio of Veterinary Services businesses includes BANFIELD® Pet Hospital, BLUEPEARL® and PET PARTNERSTM . Together with VCA, these businesses will provide an unprecedented level of access

---

[2]    Form 10-Q for the quarter ended September 30, 2016, filed with the SEC at www.sec.gov/Archives/edgar/data/817366/000162828016020915/woof-2016930x10q.htm.  (last visited 03/06/2017)

CLASS ACTION COMPLAINT

to high quality veterinary care for pets, from wellness and prevention to primary, emergency and specialty care. Mars Petcare is already an industry leader in pet nutrition with global brands that include ROYAL CANIN®, PEDIGREE® and WHISKAS®. Mars has a growing business in pet DNA testing through the WISDOM PANEL®, and in 2015 also acquired pet technology provider WHISTLE.

"We are thrilled to welcome VCA to the Mars family and to our portfolio of brands and businesses around the world," said Mars Chief Executive Officer Grant F. Reid. "VCA is a leader across pet health care and the opportunity we see together—for pets, pet owners, veterinarians and other pet care providers —is tremendous. We have great respect for VCA, with whom we share many common values and a strong commitment to pet care. Together, we will be able to provide even greater value, better service and higher quality care to pets and pet owners."

Since its founding in 1986, VCA has grown from one facility in Los Angeles to nearly 800 animal hospitals with 60 diagnostic laboratories throughout the United States and Canada. Through organic growth and a series of acquisitions, VCA has become one of the largest and most diverse pet healthcare companies, operating across four divisions including veterinary services, laboratory diagnostics, imaging equipment and medical technology, and pet care services. "Joining the Mars family of brands provides significant value to our stockholders while also preserving the Company's values and a culture focused on investing in our people and facilities to promote excellence in pet care and long-term growth," said VCA Chief Executive Officer Bob Antin. "Mars has a long-standing commitment to pet health, wellness and nutrition. We will work together every day to continue to provide the quality care and excellent service VCA is known for to our clients and their pet families."

CLASS ACTION COMPLAINT

"We have always been impressed by VCA and the excellent services it offers to pets across diverse business segments," said Mars Global Petcare President Poul Weihrauch. "VCA's industry-leading partnerships with veterinarians and pet care providers together with its expertise in veterinary services, diagnostics and technology will position Mars to deliver accessible, quality care and continue to create a better world for pets. VCA's philosophy of partnering with the veterinary profession and educational institutions is aligned with our core values and culture. We look forward to together providing the best care possible for pets."

As one of the world's leading pet care providers, Mars Petcare is committed to attracting, developing and retaining the best veterinarians and pet care professionals in the world, supporting them in their efforts to provide cutting edge delivery of healthcare to pets and to advancing the profession.

**VCA to be a distinct and separate business unit within Mars Petcare**

Upon completion of the transaction, VCA will operate as a distinct and separate business unit within Mars Petcare, alongside its other Veterinary Services businesses, BANFIELD® Pet Hospital, BLUEPEARL® and PET PARTNERS™, and will continue to be led by Bob Antin, Chief Executive Officer, President, Chairman and a founder of VCA. The company will remain headquartered in Los Angeles, California and will remain focused on its business model and strategic objectives.

**Closing Conditions**

The transaction is subject to certain customary closing conditions, including, among other things, VCA shareholder approval and customary regulatory approvals. Mars has committed financing for the

CLASS ACTION COMPLAINT

purchase of VCA. We expect the transaction to close in Q3 2017.

22.     VCA's stock has demonstrated significant growth in the last year. VCA stockholders should be provided with sufficient financial information in the Proxy Statement to make an informed decision regarding the Proposed Transaction.



23.     The Merger Consideration offered to VCA's public stockholders in the Proposed Transaction is unfair and inadequate because, among other things, the intrinsic value of the Company's common stock is materially in excess of the amount offered for those securities in the proposed acquisition given the Company's prospects for future growth and earnings.  The Proposed Transaction will deny Class members their right to fully share equitably in the true value of the Company.

24.     For example, the Company's third quarter 2016 results, released on October 26, 2016, were very positive. The Defendant Antin commented on these results:

> We had an outstanding quarter highlighted by 16.2% growth in our adjusted diluted earnings per common share. We continue to experience healthy organic revenue growth and increasing gross margins in both our core Animal Hospital and Laboratory businesses. Given our results relative to our expectations and our future acquisition pipeline, we remain optimistic with respect to our results for the full year ended December 31, 2016.
>
> Animal Hospital revenue in the third quarter increased 25.2%, to $553.4 million, driven by acquisitions made during the past 12 months and same-store revenue growth of 5.4%. Our same-store gross profit margin increased 50 basis points to 17.5%, and our total gross margin remained flat at 17.0%. Excluding acquisition-related amortization expense, our Non-GAAP same-store gross profit margin increased 40 basis points to 18.4%; and Non-GAAP Animal Hospital total gross profit margin increased 50 basis points to 18.5%. During the 2016 third quarter, we acquired 12 independent animal hospitals which had historical combined annual revenue of $38 million bringing our year to date total, excluding CAPNA, to 49 independent animal hospitals with historical combined annual revenue of $146 million.
>
> Our Laboratory internal revenue in the third quarter increased 5.5% to $105.1 million; laboratory gross profit margin increased 40 basis points to 51.6% and our operating margin increased 60 basis points to 42.3%. Excluding acquisition-related amortization expense, Non-GAAP Laboratory gross profit increased 20 basis points to 51.9%; and Non-GAAP Laboratory operating margin increased 60 basis points to 42.7%/ [3]

---

[3]     www.sec.gov/Archives/edgar/data/817366/000117184316012626/exh_991.htm.

CLASS ACTION COMPLAINT

25.     On the conference call with analysts, the Company's Chief Financial Officer, Tom Fuller, commented on specific financial metrics:

> Today, we reported GAAP earnings per share, diluted earnings per share $0.71 per share, adding back acquisition related amortization expense of $0.07 per share, adjusted diluted earnings per share of $0.79 which is 16.1% increase over the $0.68 of adjusted diluted earnings per share in the third quarter of 2015… adjusted diluted earnings per share increased almost 20%, 19.7% year-over-year on an apples-to-apples basis, so great EPS growth. Our core hospital and lab businesses continued well; margins are up in both of those segments and over 5% on comps for each of those. On a day adjusted internal growth of 5.5%, the lab adjusted operating margin was up 60 basis points and on same-store growth in the hospitals of 5.4%, same-store adjusted gross profit margin was up 40 basis points.
>
> As for the components of growth, number of requisitions volume up 3.3%, a $3,495,000; and average requisition up 2.1% to $30.08. Total requisitions for the quarter, same number, $3,495,000. So, I think the labs had a great quarter, 5.5% internal growth, 4.8% total growth with that business day adjustment affecting margins a little bit, but still great margin improvement, 54% incremental margin, 58% adjusted for that billing day difference. So, lab market is strong, October is trending above 5%, so very pleased with the lab performance.
>
> So, companywide, I think we had a good solid quarter, the economy is hanging in there, consumer is getting stronger, I think demand for our services continues to be good, and we continue to do good job managing. I think we're seeing, on good internal growth rates; we're seeing the operating leverage we've seen in the past, good expansion, hospital lab, operating margins up 30 basis

CLASS ACTION COMPLAINT

points in the hospitals, 60 basis points improvement in lab operating margins.

[W]e have a great free cash flow, very strong balance sheet to finance all that growth.[4]

26.     The Company's fourth quarter results, released on February 9, 2017, similarly were positive.  The Individual Defendants Antin commented:

We had a strong fourth quarter, which concluded another excellent year. We experienced solid organic revenue growth of 4.9% and 5.3% in our core Animal Hospital and Laboratory business segments, respectively.

Animal Hospital revenue in the fourth quarter of 2016 increased 26.2% to $539.4 million driven by acquisitions made in the past twelve months and same-store revenue growth of 4.9%. Our same-store gross profit margin increased to 15.4%, from 14.3% and our total gross margin increased to 14.4% from 14.2% in the prior-year quarter. During the quarter, we acquired 22 independent animal hospitals, which had historical combined annual revenue of $73.1 million, bringing our year-to-date total (including CAPNA) to 127 independent animal hospitals with historical combined annual revenue of $397.0 million.

Our Laboratory internal revenue in the fourth quarter of 2016 increased 5.3% to $98.4 million driven by an increase in average revenue per requisition of 4.3%. Laboratory gross profit margin decreased slightly to 48.5% from 48.8% and Non-GAAP Laboratory operating margin increased to 39.1% from 38.4%.[5]

---

[4]     http://seekingalpha.com/article/4015207-vcas-woof-ceo-bob-antin-q3-2016-results-earnings-call-transcript?part=single. (last visited 03/06/2017)

[5]     www.sec.gov/Archives/edgar/data/817366/000117184317000782/exh_991.htm     (last visited 03/06/2017)

CLASS ACTION COMPLAINT

27.    But the Board did little to seek out better proposals from other entities to maximize stockholder value.  Indeed, as reflected in the Proxy Statement, the Board initially discussed a strategic transaction with Mars about two years ago.  In 2016, the negotiations resumed almost exclusively with Mars.  Proxy Statement, 29-38.

## The Materially Incomplete and Misleading Proxy Statement

28.    On February 15, 2017, Defendants caused the material incomplete and misleading Proxy Statement to be filed with the SEC.  The information contained in the Proxy Statement has thus been disseminated to VCA stockholders to solicit their vote in favor of the Proposed Transaction.  The Proxy Statement omits certain material information concerning the fairness of the Proposed Transaction and Merger Consideration. Without such information, VCA shareholders cannot make a fully informed decision concerning whether or not to vote in favor of the Proposed Transaction.

29.    First, the "Projected Financial Information" section of the Proxy Statement (50-53) fails to provide material information concerning the Company's financial projections.  Specifically, the Proxy Statement provides projections for Non-GAAP financial metrics including Adjusted EBITDA,[6] Adjusted Net Income, Adjusted Fully Diluted EPS and Unlevered Free Cash Flow ("UFCF"), but fails to disclose the line-item projections for the specific metrics, adjustments and/or inputs that are used to calculate these Non-GAAP financial measures.  Proxy Statement, 52-53.

---

[6]    Adjusted EBITDA also was utilized by Barclays to determine a range of equity valuations for the Company using the Discounted Cash Flow Analysis. Specifically, Barclays relied on the Company's Adjusted EBITDA to calculate the  range of terminal value multiples of 12.0x to 14.0x.  Proxy Statement, 46.

30.    The Proxy Statement provides that the Board relied on these projections to recommend the Proposed Transaction and to solicit stockholders to vote in favor of the Proposed Transaction. Proxy Statement, at 39.  Therefore, this information is material to stockholders to weigh the solicitation statement and must be disclosed.

31.    Moreover, when a company discloses information to solicit votes in a Proxy Statement that includes non-GAAP financial measures, the Company must also disclose comparable GAAP measures and a quantitative reconciliation of forward-looking information.  17 C.F.R. § 244.100.

32.    Indeed, the SEC has recently increased its scrutiny of the use of non-GAAP financial measures in communications with shareholders.  Former SEC Chairwoman, Mary Jo White, recently stated that the frequent use by publicly traded companies of unique company-specific non-GAAP financial measures (as the Company has included in the Recommendation Statement here), implicates the centerpiece of the SEC's disclosures regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation.  Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors.  And last month, the staff issued guidance addressing a number of troublesome practices *which can make non-GAAP disclosures misleading*: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data.  I strongly

urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.  I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.

33.    In recent months, the SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heighted its scrutiny of the use of such projections.[7]  Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[8]  One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide *any* reconciling metrics that are available without unreasonable efforts.

34.    The above-referenced line item projections that have been omitted from the Proxy Statement for VCA are precisely the types of "reconciling metrics" that the SEC has recently indicated should be disclosed to render non-GAAP financial projections not misleading to shareholders.

35.    The omission of the line item projections used to calculate the various non-GAAP measures included in the Proxy Statement and/or the most directly

---

[7]    *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. Times, Apr. 22, 2016, http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0 (last visited 03/06/2017).

[8]    *Non-GAAP Financial Measures, Compliance & Disclosure Interpretations*, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm. (last visited 03/06/2017)

CLASS ACTION COMPLAINT

comparable GAAP measures, renders the projections included on page 52-53 of the Proxy Statement  materially incomplete and misleading

36.    The Proxy Statement also discloses that the Board, in making its recommendation in favor of the Proposed Transaction, may also have relied on prior preliminary projections, which appear to have been updated. The Proxy Statement indicates that the Board  looked to management's "… preliminary financial projections through fiscal year 2021 (the "Preliminary Management Projections"), which it provided to Barclays solely for the purpose of enabling Barclays to prepare its preliminary financial analysis of the Company, which was discussed with the Board at its December 8, 2016 meeting. The Company informed Barclays that management was continuing its review of the Preliminary Management Projections, and expected to revise certain of the assumptions and estimates used in the Preliminary Management Projections during the course of its continuing review. The Preliminary Management Projections were not provided to Mars."   The Proxy continues, "Between  December  6,  2016  and  December 30, 2016, management refined the assumptions and estimates used in the preparation of its financial projections, as further described below. On December 16, 2016, management provided Barclays with updated financial projections, which were revised from the Preliminary Management Projections, for the purpose of enabling Barclays to prepare its updated preliminary financial analysis of the Company, which was discussed with the Board at its December 27, 2016 meeting. These revised financial projections were also made available to Mars and its advisors on December 16, 2016. On December 30, 2016, the Company provided to Barclays the Final Management Projections, which did not materially differ from the December 16, 2016 projections, and instructed Barclays to use the Final Management Projections in connection with the preparation of its fairness opinion

to the Board. The Final Management Projections were also made available to Mars and the Board. While certain underlying components comprising the definition of Unlevered Free Cash Flow were provided to Mars, the Company's arithmetical calculation of Unlevered Free Cash Flow was not provided to Mars." Proxy Statement, 50.[9]

37.   Thus, disclosure of the actual assumption and/or GAAP inputs to determine the Company's projections is critical for stockholders to understand the basis for the Board's recommendation.

38.   The Proxy Statement also discloses that VCA entered into a non-disclosure/confidentiality agreement ("NDA") that contained a "customary"

_____

[9] The Proxy Statement provides some information on the bases for the different projections, which appear indicate that the projections that were relied on by the Board and used and/or relied on by Barclays, would be more favorable for Barclay's Fairness Opinion in support of the Merger Consideration:

The principle differences in the assumptions and estimates underlying the Preliminary Management Projections and the Final Management Projections are as follows:

- the projected rate of growth of the Company's business was revised due to management's belief that the Company's revenue would grow at projected rates of 14.3% and 9.8% for the years ended 2017 and 2018, respectively, based on recent historical performance of the Company, as opposed to the projected rates of 14.9% and 10.0% for the years ended 2017 and 2018, respectively, that were used in the Preliminary Management Projections. The change in the projected rates was driven by management's downward adjustment to projected acquisition activity and a slight decrease in management's organic growth projections for the years ended 2016-2017. The decrease in these revenue growth projections resulted in a decrease in the projected revenues for the Company in all projected years, and
- as a result of the above mentioned decrease in the projected revenues, as well as management's lower projected gross margin expansion for all projected years and management's slight increase in management's projection for the selling, general, and administrative expenses growth rate in 2017, Adjusted Net Income and Adjusted EBITDA were lower in the Final Management Projections than in the Preliminary Management Projections for all projected years and Unlevered Free Cash Flow was lower in each year from 2018-2021.

Proxy Statement, 51-52.

standstill provision that required the Company's consent to engage in certain actions. However, the Proxy Statement is silent as to whether this NDA contained a "Don't Ask Don't Waive" provisions and/or whether the standstill provision still is in effect or whether, as is required, the standstill clause was terminated once VCA and Mars entered into the Merger Agreement. Proxy Statement, at 30.

39.    By reason of the foregoing, Defendants have violated the Exchange Act and rules promulgated thereunder.

40.    Unless Defendants are enjoined by the Court, they will continue to breach their duties owed to Plaintiff and the members of the Class, to the irreparable harm of the members of the Class.

41.    Based on the foregoing disclosure deficiencies in the Proxy Statement, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that VCA stockholders will suffer if they are required to vote on the Proposed Transaction without the above-referenced material misstatements and omissions being remedied.

## CLASS ALLEGATIONS

42.    Plaintiff brings this Action as a class action pursuant to Fed. R. Civ. P. 23 individually and on behalf of all other holders of VCA common stock (except defendants named herein and any person, firm, trust, corporation, or other entity related to or affiliated with them and their successors in interest) who are or will be threatened with injury arising from Defendants' wrongful actions as more fully described herein (the "Class").

43.    This action is properly maintainable as a class action.

44.    The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes there are thousands of

members in the Class.  As of February 21, 2017, there were 81,236,013 shares of Common Stock issued and outstanding.[10]  The holders of these shares of stock are believed to be geographically dispersed throughout the United States.  All members of the Class may be identified from records maintained by VCA or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

45.   Questions of law and fact are common to the Class and predominate over questions affecting any individual class member.  The common questions include, *inter alia*, the following:  (i) whether Defendants have misrepresented or omitted material information concerning the Proposed Transaction in the Proxy Statement in violation of Section 14(a), SEC Rule 14a-9 among other SEC rules, (ii) whether the Individual Defendants may be liable under Section 20(a) of the Exchange Act; and (iii) whether Plaintiff and other members of the Class will suffer  irreparable harm if the Proposed Transaction is consummated as presently anticipated.

46.   Plaintiff's claims are typical of the claims of the other members of the Class.  Plaintiff and the other members of the Class have and will sustain legal and equitable damages as a result of Defendants' wrongful conduct as alleged herein.

47.   Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent.  Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.

48.   A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Plaintiff knows of no difficulty to be

---

[10] www.sec.gov/Archives/edgar/data/817366/000162828017001885/woof-2016x12x31x10k.htm.

encountered in the management of this action that would preclude maintenance as a class action.

## COUNT I
### Claim for Violations of Section 14(a) of the Exchange Act Against All Defendants

49.     Plaintiff repeats and realleges each allegation set forth herein.

50.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.

51.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with stockholders shall not contain "any statement which, at the time an in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9.

52.     Specifically, the Proxy Statement violates Section 14(a), Rule 14a-9 and Regulation G because it omits material facts as set forth above which renders the statements and information identified above false and/or misleading. Moreover, in the exercise of reasonable care, Defendants should have known that the Proxy is materially misleading and omits material facts that are necessary to render it non-misleading.

53.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff who will be deprived of his entitlement to cast a fully informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.   As a direct and proximate result of Defendants' conduct, Plaintiff will be irreparably harmed.

54.     Plaintiff and the members of the Class have no adequate remedy at law.

CLASS ACTION COMPLAINT

**COUNT II**
**Claims for Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

55.     Plaintiff repeats and realleges each allegation set forth herein.

56.     The Individual Defendants acted as controlling persons of VCA within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of the VCA, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements which Plaintiff contends were false and/or materially incomplete and therefore misleading.

57.     Each of the Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

58.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  Thus, the Individual Defendants were intimately connected with and directly involved in the making of this document.

CLASS ACTION COMPLAINT

59.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Merger.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

60.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

61.     Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.     Enjoining Defendants and all persons acting in concert with them from proceeding with, consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above, which has been omitted from the Proxy Statement and obtain increased merger consideration for the Company's stockholders;

C.     Rescinding, to the extent already implemented, the Proposed Transaction or any of the terms thereof, or granting Plaintiff and the Class rescissory damages

D.     In the event Defendants consummate the Proposed Transaction, awarding damages to Plaintiff and the Class;

E.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

CLASS ACTION COMPLAINT

1       F.      Granting such other and further relief as this Court may deem just and

2 proper.

3                         **JURY DEMAND**

4      Plaintiff demands a trial by jury on all issues so triable.

Dated:  March 6, 2017               **FARUQI & FARUQI, LLP**

/s/ *Barbara A. Rohr*
Barbara A. Rohr, SBN 273353
Benjamin Heikali, SBN 307466
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: (424) 256-2884
Facsimile:  (424) 256-2885
Email:  brohr@faruqilaw.com
          bheikali@faruqilaw.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**FARUQI & FARUQI, LLP**
James M. Wilson, Jr.
685 Third Ave., 26th Fl.
New York, NY 10017
Tel.: (212) 983-9330
Fax: (212) 983-9331
Email: jwilson@faruqilaw.com

**MONTEVERDE & ASSOCIATES PC**
David E. Bower
600 Corporate Pointe, Suite 1170
Culver City, CA 90230
Tel: (213) 446-6652
Email: dbower@monteverdelaw.com

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT

## CERTIFICATION OF PROPOSED LEAD PLAINTIFF

I, Josh Krieger Sellers ("Plaintiff"), declare, as to the claims asserted under the federal securities laws, that:

1. Plaintiff has reviewed a draft complaint against VCA, Inc. ("VCA") and its board of directors and has authorized the filing of a complaint substantially similar to the one I reviewed.

2. Plaintiff selects Faruqi & Faruqi, LLP and Monteverde & Associates PC and any firm with which it affiliates for the purpose of prosecuting this action as my counsel for purposes of prosecuting my claim against defendants.

3. Plaintiff did not purchase the security that is the subject of the complaint at the direction of Plaintiff's counsel or in order to participate in any private action arising under the federal securities laws.

4. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

5. Plaintiff's transactions in VCA securities that are the subject of the complaint during the class period specified in the complaint are set forth in the chart attached hereto.

6. In the past three years, Plaintiff has not sought to serve nor has served as a representative party on behalf of a class in an action filed under the federal securities laws, except as specified below:

7. Plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury under the laws of the United States that the foregoing information is correct to the best of my knowledge.

Signed this 6th day of March 2017.

_____
Josh Krieger

| Transaction (Purchase or Sale) | Trade Date | Quantity |
|---|---|---|
| Purchase | 03/18/16 | 100 |
|  |  |  |
|  |  |  |
|  |  |  |